IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD A. WEST, | : | |
|     Plaintiff | : | No. 1:12-cv-1004 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| OFFICER SHULTZ, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are Plaintiff Gerald A. West's motion to amend his complaint (Doc. No. 20), motion for injunctive relief (Doc. Nos. 29, 37), and motion to deny or to continue Defendants' motions to dismiss and for summary judgment (Doc. No. 44). For the reasons that follow, the Court will deny Plaintiff's motion to amend his complaint and motion for injunctive relief. In addition, the Court will deny Plaintiff's motion to deny or to continue Defendants' motions to dismiss and for summary judgment.

I.   **BACKGROUND**

On May 29, 2012, Plaintiff Gerald A. West , an inmate at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), filed a combined <u>Bivens</u>[1] and Federal Tort Claims Act[2] ("FTCA") action against the United States of America and several federal employees setting forth claims of deliberate indifference, failure to protect, retaliatory tactics, and denial of food and water. (Doc. No. 1.) Plaintiff named as Defendants the United States of America, and the following current or former employees at USP-Lewisburg: B.A. Bledsoe, retired Warden; K.

---

[1] See <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 288 (1971).

[2] Federal Tort Claims Act, 28 U.S.C. § 2671.

1

Bahre, D. Young, and D. Hudson, Associate Wardens; K. Whittener, Lieutenant; J. Adami, Unit Manager; M. Edinger, Counselor; and C. Shultz and B. Shade, Correctional Officers. (Id. at 2.)

On September 20, 2012, Defendants filed a motion to dismiss the complaint and for summary judgment in their favor. (Doc. No. 16.) Defendants argued that the Court should grant summary judgment with regard to all Bivens claims except the claims against Defendants Shade and Shultz because Plaintiff failed to exhaust administrative remedies, and urged the Court to enter judgment in their favor on Plaintiff's FTCA claims because Plaintiff failed to properly exhaust his administrative tort claim. (Doc. No. 17.) Defendants further argued that the Court should dismiss Plaintiff's claims against Defendants Shade, Edinger, Adami, Whittaker, Bahre, Bledsoe, Hudson, and Young for Plaintiff's failure to state a constitutional violation; and should dismiss the deliberate indifference claim against Defendant Shultz because Plaintiff failed to sufficiently allege personal involvement. (Id.) Finally, Defendants argued that they are entitled to qualified immunity from suit. (Id.)

On October 19, 2012, Plaintiff filed a motion to amend his complaint to arrange his claims in a more understandable fashion and to clarify the identity of one of the Defendants as Officer Spade, not Officer Shade.[3] (Doc. No. 21.) Defendants filed a brief in opposition to Plaintiff's motion to amend, arguing that the proposed amended complaint is deficient, and asserting that Defendants interpreted all allegations in the original complaint concerning Officer

---

[3] In both the original and proposed amended complaints, Plaintiff names as a defendant Officer Spade. In Defendants' motions to dismiss and for summary judgment, Defendants refer to this defendant as Officer Shade. Plaintiff contends that there are two employees at the prison - Officer Spade and Officer Shade. He states that he names and refers to Spade as a defendant in the complaint, and only mentions Shade, who is not a named defendant in this action. (Doc. No. 21.)

Spade or Officer Shade to be the same allegations and responded accordingly. (Doc. No. 22 at 8.) Thus, Defendants argue, any proposed amendment on the basis of clarifying the identity of Officer Spade is futile. (Id.) Defendants further argue that a comparison of Plaintiff's original and proposed amended complaints reveals that the allegations remain essentially the same with the prayer for relief as the only significant difference.[4] (Id. at 6.)

On June 5, 2013, Plaintiff filed a motion for a preliminary injunction and for a temporary restraining order to prevent Defendants from: (1) refusing to copy legal documents for him; (2) freezing money in Plaintiff's account to prevent him from buying stamps; and (3) threatening and physically abusing Plaintiff. (Doc. No. 37.) On July 1, 2013, Plaintiff filed a motion to deny or continue Defendants' motions to dismiss or for summary judgment until Plaintiff has the opportunity to conduct discovery. (Doc. No. 44.) Defendants have filed briefs in opposition to Plaintiff's motion for a preliminary injunction and his motion for continuance. (Doc. Nos. 42, 49.)

  A. **Allegations in the Complaint**

In his complaint, Plaintiff enumerates multiple claims of abuse, neglect, and threatening tactics by current and former employees of USP-Lewisburg. First, Plaintiff claims that on August 10, 2010, after reporting to an officer at USP-Lewisburg that his cell-mate threatened to stab him to death if he did not move out, the officer ignored his report, and Plaintiff was sexually assaulted by his cell-mate. (Doc. No.1 at 3.) Plaintiff further claims that on August 11, 2010,

---

[4] In the proposed amended complaint, Plaintiff seeks the same amount of compensatory damages, plus one hundred thousand dollars in punitive damages, restoration of "all of Plaintiff invested and non-invested good time," and he requests "immediately arrange for medical treatment for Plaintiff." (Doc. No. 20-1 at 3.)

after he notified a physician's assistant that he had been assaulted, Defendant Schultz told his cell-mate that Plaintiff had reported the incident. (Id.) Plaintiff claims that after Defendant Schultz left, Plaintiff was sexually assaulted a second time. (Doc. No. 1 at 4.) After this incident, Plaintiff alleges that he refused to give back his food tray until a Lieutenant was notified of the assault. (Id.) Consequently, Plaintiff claims he was removed from his cell by a Lieutenant and by Defendant Adami, who threatened Plaintiff by saying that he was to remain quiet about the incident or he would not be able to leave the Special Management Unit. (Id.) Thereafter, Plaintiff claims that Defendant Adami moved Plaintiff back to his cell block and told him to find a cell-mate or he would be placed in restraints. (Doc. No. 1 at 5.) Plaintiff indicates that on March 23, 2011, he filed a complaint against Defendant Adami with respect to this threat. (Id.)

Plaintiff alleges that another incident took place on March 28, 2011, stating that Defendant Spade falsified a misconduct report so that Plaintiff would be placed in hand restraints and taken to a cell with another inmate in restraints. (Doc. No. 1 at 5.) Plaintiff claims that he was thrown on top of the other inmate, and then kicked to the floor by said inmate. (Id.) Plaintiff alleges that after this incident, he had to sleep on the floor for two days with no restroom or food, and that during this two-day period, he complained that his restraints were too tight and that he needed medical attention. (Doc. No. 1 at 6.) Plaintiff claims that his complaints of numbness in his hands were ignored by a physician's assistant and the symptoms were not reflected in Plaintiff's medical record. (Id.)

In his complaint, Plaintiff also alleges that he was subjected to retaliatory tactics for engaging in hunger strikes. (Doc. No. 1 at 7, 8.) Plaintiff claims that after he went on a hunger

strike on May 12, 2011, he was stripped of all his property and provided with paper clothing by individuals not named as defendants in this action. (Doc. No. 1 at 7.) Plaintiff further alleges that he told Defendants Edinger and Whittener that he did not want to live with a particular inmate because that inmate had stated he would assault anyone housed with him. (Id.) Plaintiff claims that Defendants Edinger and Whittener told him that he would get a cell-mate regardless of whether he was on a hunger strike or not, and that Plaintiff would go in the cell with his cell-mate or he would be placed in restraints. (Id.) Plaintiff alleges that after he was placed in the cell, he was kicked by the inmate in the ribs and chest. (Doc. No. 1 at 8.) Plaintiff claims that after this incident, he was placed in an empty cell and denied mail, hygiene items, clean clothes, and toilet paper. (Id.) Plaintiff also alleges that Defendants Hudson, Bahre, and Young told Plaintiff that he was not getting any personal or institutional property back until he ended his hunger strike. (Id.)

## II.  DISCUSSION

### A.  Motion to Amend

In Plaintiff's motion for leave to file an amended complaint, Plaintiff seeks to clarify the identity of one of the defendants and to arrange his claims in a more understandable fashion. Plaintiff's proposed amended complaint is not identical to the original complaint, but it does set forth the same claims against the same defendants with few changes from the original complaint besides the prayer for relief.

Rule 15 of the Federal Rules of Civil Procedure governs amendments and supplementation of pleadings. Fed. R. Civ. P. 15. Rule 15(a) authorizes a party to amend his pleading once as a matter of course within 21 days after service, or, if the pleading is one to

which a responsive pleading is required, within 21 days after service of the responsive pleading or within 21 days after service of a dispositive motion under Rule 12, whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A) and (B). "In all other cases, a party may amend its pleading only with the opposing party's written consent, or with the court's leave," which courts are to give freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the amendment." Forman v. Davis, 371 U.S. 178, 182 (1962); see also Oran v. Safford, 226 F.3d 275, 291 (3d Cir. 2000).

Additionally, "amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir 1988) (citing Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citing Glassman v. Computervision Corp, 90 F.3d 617, 623 (1st Cir. 1996)). In assessing "futility," the district court applies the same standard of legal sufficiency as it applies under Rule 12(b)(6). Id.

Besides the relief sought, there are no other discernable changes in Plaintiff's proposed amended complaint. The defendants named and the claims set forth against them remain the same. As such, Defendants' motions to dismiss and for summary judgment, if successful, would make the proposed change to relief sought futile. The proposed changes to the relief sought do not cure the deficiencies in the original complaint in light of the arguments raised in Defendants'

6

pending motion to dismiss, which include the failure to exhaust and the lack of personal involvement. For these reasons, Plaintiff's motion to amend his complaint is futile and the motion will be denied.

### B. Motions for Injunctive Relief

In a letter addressed to the Court and filed on April 16, 2013, Plaintiff alleges that since the filing of this lawsuit, he has experienced threats and physical abuse from the staff at USP-Lewisburg. (Doc. No. 29.) The concerns raised by Plaintiff are with respect to Defendant Edinger and two others not named as defendants in this matter. Plaintiff claims that these individuals threatened to kill him if he did not drop his complaint. (Id.) Plaintiff further claims that he has not received any food since April 8, 2013, and that prison officials have cut off his water supply for days at a time, and that his weight has dropped from 170lbs to 140lbs. (Id.) On June 5, 2013, Plaintiff filed a motion for injunctive relief seeking a temporary restraining order or a preliminary injunction. (Doc. No. 37.)

In the motion for injunction relief, Plaintiff claims that on May 14, 2013, he was on a "declared hunger strike" and that he had to be taken from his cell to have his vital signs checked. (Doc. No. 38.) Plaintiff alleges that the officers involved in this incident instructed Plaintiff to eat the food they gave him or the officer would "beat the shit out of him." (Id.) Plaintiff further alleges that when he refused the food, the officers came into his cell and assaulted him and thereafter place him in steel restraints that cut off the circulation to his hands and legs. (Id.) In support of his motion, Plaintiff filed a copy of an incident report describing Plaintiff assaulting a prison officer and refusing to obey an order. (Id.)

A court should issue an injunction only if the movant produces evidence sufficient to

convince a trial judge that these factors favor preliminary relief. Opticians, 920 F.2d at 192 (citing ECRI v. McGraw Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)). "The purpose of the preliminary injunction is to preserve the status quo until the rights of the parties can be fairly and fully litigated and determined by strictly legal proofs and according to the principles of equity." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980) (citing Meiselman v. Paramount Film Distributing Corp., 180 F.2d 94, 97 (4th Cir. 1950)). Thus, the grant of injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances." American Telephone & Telegraph Co. V. Winback and Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) (quoting Frank's GMC Truck Center, Inc. v. General Motor Corp., 847 F.2d 100, 102 (3d Cir. 1988)). The party seeking a temporary restraining order or preliminary injunctive relief has the burden of demonstrating: (1) a reasonable probability of success on the merits; (2) irreparable harm if the injunction is denied; (3) that the issuance of an injunction will not result in greater harm to the non-moving party; and (4) that the public interest would best be served by granting the injunction. Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997); Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir. 1990). The facts must support a finding that immediate and irreparable injury will result to the movant if the request for preliminary relief is denied. United States v. Stazola, 893 F.2d 34, 37 n.3 (3d Cir. 1990). The plaintiff bears the burden of establishing a "clear showing of irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989); ECRI, 809 F.2d at 226 ("It is not enough to merely show irreparable harm. The plaintiff has the burden of showing immediate irreparable injury, which is more than merely serious or substantial harm and which cannot be redressed

with money damages.).  Absent a showing of immediate irreparable injury, the court should deny preliminary injunctive relief.  Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir. 1994).

Moreover, in the prison context, a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'"  Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982)).  When a plaintiff requests an injunction that would require a court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief."  Rizzo v. Goode, 423 U.S. 362, 379 (1976).  Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking."  Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security.  Beard v. Banks, 548 U.S. 521 (2006); Bell v. Wolfish, 441 U.S. 520, 527 (1979).  With these considerations in mind the Court finds that neither preliminary injunctive relief nor a temporary restraining order is warranted in this case.

In opposition to Plaintiff's motion, Defendants submitted the Declaration of S. Heath, a Special Investigative Agent ("SIA") employed by the Bureau of Prisons, who conducted an investigation in Plaintiff's allegations of threats to his life by Defendant Edinger and other individuals.  (Doc. No. 31, Ex. A at ¶ 1.)  SIA Heath concluded that the allegations were without merit, and that Plaintiff was not at risk of being harmed by Defendant Edinger or other employees of USP-Lewisburg.  (Id.)  The Defendants also submitted the Declaration of J.

9

Treibley, a correctional officer at USP-Lewisburg, who has access to inmates' records. (Doc. No. 31, Ex. B.) Officer Treibley is assigned to the same floor as Plaintiff and states that all inmates in the Special Management Unit are fed in their cells and that weekly records are kept with respect to whether an inmate accepts or refuses any of his three meals a day. (Id. at 3.) Records from April 7, 2013 through April 22, 2013 reveal that Plainitff refused his breakfast meal from April 9-11 and April 14-15; he refused his supper meal on April 9 and April 13, 2013; and he accepted all of his other meals during that period of time. (Id.) Treibly further states that Plaintiff is able to access water in his current cell assignment through the running water that is accessible to the inmates by depressing a button in the sink. (Id.)

Defendants also submitted the Declaration of K. Pigos, Clinical Director of the medical department at USP-Lewisburg, who has access to inmate records. (Doc. No. 31, Ex. C.) Pigos notes that Plaintiff's medical records reveal that since the time of Plaintiff's arrival at USP-Lewisburg on February 16, 2010, he has declared hunger strikes on four occasions. (Id.) Plaintiff declared the first strike on May 16, 2011 after he had missed twelve meals; he was medically assessed at the time and weighed 150lbs. (Id.) The strike ended on June 3, 2011 and no intravenous feedings occurred during this hunger strike. (Id. at ¶ 2) The second hunger strike was declared by Plaintiff on October 23, 2011 after he missed his ninth meal. (Id.) Plaintiff's weight was 137lbs, and the potential consequences of a hunger strike were explained to him. (Id.) On November 2, 2011, Plaintiff continued on his hunger strike and missed his 39th meal as of breakfast on said date. (Id.) His weight was 143lbs and intravenous fluids were administered to prevent dehydration. (Id.) On November 9, 2011, Plaintiff continued on his hunger strike. (Id.) It was noted that involuntary feeding was not clinically indicated at that time. (Id.)

Plaintiff ended his hunger strike on November 14, 2011.  (Id.)

Medical records indicate that a third hunger strike was declared on December 11, 2011 after Plaintiff missed eleven meals. (Doc. 31, Ex. C, Pigos Decl. ¶ 4; Att. 8, Med. Record.) Plaintiff's weight was 135lbs and once again, the consequences of a hunger strike were explained to him.  (Id.)  Although the medical records do not indicate with certainty when this strike ended, the Chronic Care Clinic saw Plaintiff on December 23, 2011, and the record notes that he was feeling better and his appetite was good.  (Id.)  Plaintiff declared a fourth hunger strike on June 2, 2012 after he missed eight meals. (Id., Ex. C ¶ 6; Att. 10.) The strike ended the following day.  (Id, Att. 11.)  The Chronic Care Clinic saw Plaintiff again on June 22, 2012, and his weight was 161lbs.  (Id.)   His medical records further indicate that when the medical staff saw Plaintiff on April 23, 2013, Plaintiff indicated that he had just finished another hunger strike that had not been reported to anyone.  (Id.)  His weight at the time was 158lbs.  (Id., Ex. C, Att. 13.)

Based on the foregoing, the Court finds that injunctive relief is not warranted with respect to Plaintiff's motion for a temporary restraining order.  First, Plaintiff asks the Court to issue a restraining order against three BOP employees who are not parties to this action.  Federal Rule of Civil Procedure 65 provides that a restraining order is binding only upon the parties to the action, their "officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation" with them.  Fed. R. Civ. P. 65(d)(2).  "A non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought."  Elliot v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996) (quoting Fed. R. Civ. Pro. 65).  Plaintiff has not

presented any evidence indicating that the non-parties named in his motion for injunctive relief are in any way in "active concert or participation" with the Defendants listed in the original complaint.

Additionally, Plaintiff seeks to obtain relief with respect to events that are totally unrelated to the events that serve as the basis of the underlying complaint in this action. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (finding that a motion based on new assertions of mistreatment different from those raised in plaintiff's lawsuit cannot provide the basis for a preliminary injunction). Plaintiff's motion contains allegations which appear to have no connection to the allegations of his complaint. Even if the basis of the motion directly relates to the allegations in the complaint, Plaintiff fails to demonstrate that he is likely to prevail on the merits of his claims in light of the arguments set forth in Defendants' pending motion to dismiss. The only evidence Plaintiff submits in support of his motion is a copy of an Incident Report charging him with committing the prohibited acts of assaulting any person and refusing to obey an order. (Doc. No. 38-2.) If anything, this document undermines, rather than supports, Plaintiff's argument with respect to what took place on May 14, 2013.

Further, Plaintiff has not made any showing that the denial of his motion would result in irreparable harm, particularly in light of the evidence submitted by Defendants. Plaintiff does not specify any injury that he is currently suffering, and he does not indicate whether he has utilized the BOP's grievance procedures. More importantly, the Special Investigative Agent's investigation conducted with respect to Plaintiff's allegations revealed that he was not in any danger. To the extent that Plaintiff claims that water and food are being withheld from him, the records submitted by Defendants reveal that Plaintiff has running water at his disposal in his cell,

and that food is provided to him three times per day.  The records further document that Plaintiff has declared several hunger strikes and that he has refused meals provided to him on numerous occasions.  Plaintiff offers nothing to dispute the evidence submitted by the Defendants except the unsupported, conclusory statements that the Special Investigative Agent's investigation was incomplete or that persons submitting declarations had no knowledge of the events.  Finally, Plaintiff can pursue relief in a new lawsuit with respect to any new claims.  For these reasons, the first motion for injunctive relief will be denied.

        **C.**        **Motion to Deny or Order a Continuance**

In his motion requesting that the Court either deny or grant a continuance of Defendants' motions to dismiss and for summary judgment, Plaintiff claims that Defendants have not responded to his requests for the production of documents.  (Doc. No. 44.)  Defendants have not submitted a motion to stay discovery, but they have filed a "Brief in Opposition to Plaintiff's First Request for Production of Documents."  (Doc. No. 43.)  For the reasons that follow, Plaintiff's motion will be denied.

The Court has broad discretion to stay discovery pending a dispositive motion.  Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1560 (11th Cir. 1985).  A stay is proper when the likelihood that a motion to dismiss may result in a narrowing or outright elimination of discovery outweighs any likely harm from the delay.  Nineteenth St. Baptist Church v. St. Peters Episcopal Church, 190 F.R.D. 345, 349 (E.D. Pa. 2000).  In Mann v. Brenner, 375 F.App'x 232, 239-40 (3d Cir. 2010), the Third Circuit stated that staying discovery while evaluating a motion to dismiss may be appropriate in certain circumstances.  For instance, staying discovery would be appropriate while evaluating a motion dismiss where, if the motion to dismiss is granted,

discovery would be futile. Id. The Third Circuit further stated that:

> A Motion to Dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore need not be decided on its face without extensive factual development. See Neitzke v. Williams, 490 U.S. 319, 326-27 (1989)(stating the purpose of Rule 12(b)(6) is to "streamline [] litigation by dispensing with needless discovery and factfinding); Chudasama v. Mazda Motor Corp., 12 F.3d 1353, 1367 (11th Cir. 1997)("A motion to dismiss based on failure to state a claim for relief should . . . be resolved before discovery begins."); Rutman Wine Co. V. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987)(stating that the idea that discovery should be permitted before deciding a motion to dismiss "is unsupported and defied common sense [because] the purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.").

Mann, 375 F.App'x at 239.

In Defendants' motions to dismiss or for summary judgment, they seek to dismiss the majority of Plaintiff's claims on the basis of failure to exhaust administrative remedies. With respect to any remaining claims, they seek dismissal due to Plaintiff's failure to allege personal involvement or failure to set forth a viable violation of a constitutional right. Plaintiff need not conduct discovery in order to respond to these arguments. If the Court finds Defendants arguments meritorious, then discovery would be futile. To the extent any of the arguments set forth in support of dismissal of the complaint are found to be without merit, the issues would be narrowed, the surviving claims would proceed, and a discovery period would be imposed. As such, Plaintiff's motion to deny or continue Defendants' motions to dismiss and for summary judgment is denied, and Plaintiff will be afforded twenty-one days from the date of this order within which to respond to Defendants' motion. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERALD A. WEST, :
    Plaintiff : No. 1:12-cv-1004
:
v. : (Judge Kane)
:
OFFICER SHULTZ, et al., :
    Defendants :

# ORDER

**AND NOW**, this 27th day of September, 2013, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion to amend the complaint (Doc. No. 20) is **denied**.

2. Plaintiff's motions for injunctive relief (Docs. No. 29, 37) are **denied**.

3. Plaintiff's motion to deny or to continue Defendants' motion to dismiss and for summary judgment (Doc. No. 44) is **denied**.

4. Within twenty-one (21) days from the date of this order, Plaintiff shall file his opposition to Defendants' motion to dismiss and for summary judgment.

                                                  S/ Yvette Kane
                                                  YVETTE KANE, Judge
                                                  Middle District of Pennsylvania