## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD A. WEST, | : | CIVIL NO. 1:CV-12-1004 |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| OFFICER SHULTZ, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Gerald A. West ("West"), an inmate housed at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, filed a complaint alleging claims under Bivens[1], 28 U.S.C. § 1331, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). (Doc. No. 1.) Named as Defendants are the United States and individuals employed at USP-Lewisburg at the relevant time.[2] Presently pending is West's motion to supplement the complaint (Doc. No. 66) and Defendants' motion to dismiss and for summary judgment. (Doc. No. 16.) For the reasons that follow, the motion to supplement will be denied, and the motion to dismiss and for summary judgment will be granted in part and denied in part.

## I.    Allegations in the complaint

On August 10, 2010, West's cellmate threatened to stab him if he did not move out.

---

[1]  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

[2]  Those named as Defendants are B.A. Bledsoe, retired Warden; K. Bahre, D. Young and D. Hudson, Associate Wardens; K. Whittaker, Lieutenant; J. Adami, Unit Manager; M. Edinger, Counselor; and C. Shultz and B. Shade, Correctional Officers.

West notified Officer Grove of the threat, but Grove informed him that he would not be moved unless "he was f***ing or fighting."[3]  (Doc. No. 1, Compl. at 3.)  West was later sexually assaulted by his cellmate.

The following day West gave a cop-out slip to a physician's assistant with respect to the assault.  Defendant Schultz came to West's cell and "tried to inform" his cellmate about the cop-out.  After Schultz left, West was again assaulted by his cellmate.  (Id. at 4.)  West refused to return his food tray until a Lieutenant was notified.  When Defendant Carrasquillo arrived, West was removed from the cell.  Defendants Carrasquillo, Adami and a third officer threatened West to remain quiet about the incident or else he would remain in the Special Management Unit. (Id.)

Defendant Shade took West to a holding cell.  He was later moved to Z Block by Defendant Adami.  Adami told him if he did not find a cellmate he would be placed in restraints. West filed a complaint against Adami on March 23, 2011, with respect to this threat.

On March 28, 2011, West refused to be housed with a gang member who was moved to his cell.  Shade falsified a misconduct report so that West would be put in hard restraints.  (Id. at 5.)  West was taken to a cell with another inmate in restraints, and thrown on top of him.  The inmate then kicked him to the floor.  West states he had to sleep on the floor for two (2) days, and was not permitted food or the use of a restroom.  During this two (2) day period, West complained that the restraints were too tight and that he needed medical attention.  (Id. at 5-6.) Several days later, West agreed to find a cellmate and his restraints were removed.  Physician's Assistant Pigos (a non-defendant) ignored West's complaints about the lack of feeling in his

---

[3]  Grove is not named as a Defendant in this action.

hands.

On May 12, 2011, West went on a hunger strike.  In retaliation for doing so, he was taken

to D Block on May 15, 2011, and stripped of all his legal proper and provided with paper

clothing.  He does not allege that any of the named Defendants were involved in this incident.

(Id. at 7.)

Defendants Edinger and Whittener told West that he was getting a cellmate.  West

refused to cell with the inmate because he threatened to assault anyone celled with him.

Whittener gave West the choice of entering the cell or being placed in restraints.  When the cell

door was opened, the inmate kicked West in the ribs and chest.  (Id. at 8.)  West was thereafter

placed in an empty cell where he was denied mail, hygiene items and clean clothes.   Defendants

Hudson, Bahre and Young told West his property would be returned when he ended his hunger

strike.  (Id.)  Based on the foregoing, West seeks injunctive and compensatory relief.

## II.     Motion for Leave to Supplement Complaint

### A.     Standard of Review

It is within the sound discretion of the Court whether to grant or deny a motion for leave

to amend a pleading or file a supplemental pleading.  See Nottingham v. Peoria, 709 F. Supp.

542, 544 (M.D. Pa. 1988).  Fed. R. Civ. P. 15(d) addresses the matter of supplemental pleadings

when a party seeks to set out any transaction, occurrence, or event that happened after the date of

the pleading to be supplemented.  The factors to be considered in deciding whether to permit

supplementation pursuant to Rule 15(d) are clearly set forth in Nottingham, and include the

promotion of a justiciable disposition of the case, the delay or inconvenience the allowance of

such a pleading will cause, and the prejudice to the rights of the parties to the action.  (Id. at

544.)

### B.      Discussion

In West's proposed supplemental complaint, he seeks to add more that ten (10) new defendants and four (4) new claims.  He claims that: (1) he was subjected to excessive force on August 14, 2012 by Officers Potter and White; (2) he was sprayed in the face with mace by Officers Moyer and Carrasquillo on April 8, 2013; (3) he was assaulted on May 14, 2013 by Officers Miller, George and Nogle; and (4) Unit Manager Knox and Assistant Manager Wilson denied him access to the courts during the months of July and October of 2013.  (Doc. No. 66 at 2-11.)

Without unnecessary elaboration, West's request to add these new Defendants and claims will be denied.  The claims are not related to the claims set forth in the original complaint.  They involve new incidents against new individuals.  To permit West to supplement his complaint for this purpose would be in violation of Fed. R. Civ. P. 20, prejudicial to Defendants, and result in the needless delay of the resolution of this matter.  Further, there is no resulting prejudice to West in denying his request because he can pursue these claims in a new civil rights action.

### III.     Motion for Summary Judgment

### A.      Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In pertinent part,

parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Colwell v. Rite-Aid Corp., 602 F.3d 495, 501 (3d Cir. 2010)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

###### B.      Statement of Facts

On March 29, 2011, Defendant Shade wrote an incident report charging West with Threatening Another with Bodily Harm" in violation of Code 203, and Refusing an Order, in violation of Code 307. (Doc. No. 17-1 at 28, Romano Decl., Att. D.)[4] The report describes the incident as follows:

> On 3/29/11 at approximately 12:30 pm, while bringing the 3rd floor back from recreation inmate West ... refused to go back in his assigned cell in 310. Inmate West stated, "if you put me back in that cell I am going to fuck up my cellie and then I will fuck up any officer that comes in my cell then."

(Id.) According to West, the incident report was false.

The Disciplinary Hearing Officer ("DHO") who conducted the hearing on these charges determined that the greater weight of evidence supported the finding that West committed the prohibited acts as charged, and imposed sanctions against West for the infractions. (Id. at 29-31.)   Approximately six (6) months following the alleged sexual assault of August 10, 2010, West filed a grievance with respect to this issue. He claimed he was sexually assaulted by his

---

[4] For ease of reference, when citing to the record the Court will refer to the page numbers assigned by CM-ECF, the Court's Electronic Case Filing System.

cellmate on August 10, 2010, reported the matter to staff and that staff threatened him with respect to filing a complaint about this incident.

On April 15, 2011, Warden Bledsoe responded to the grievance for informational purposes only, and advised West of actions taken in response to his complaints.  (Doc. No. 17-1 at 52.)  He stated that because of the six (6) month gap in the reporting of the incident, the usual sexual assault protocol was not specifically followed.  Bledsoe also noted that West had been medically assessed and interviewed on April 8, 2011 by SIS (the BOP's special investigations staff) about the reported assault.  (Id.)

During the SIS interview regarding the alleged assault, West stated that he "attempted to notify staff by holding his food trays."  (Doc. No. 17-1 at 42.)  He also claimed to have told the Captain, Mr. Adami, and Lt. Carrasquillo that he needed to see medical, but admits he does not think they heard him.  The investigative report concluded the following:

> Based on the information obtained throughout this investigation and lack of any physical evidence, it is the determination of this investigator, the allegation is unfounded.  Due to the length of time that had passed from the alleged sexual assault date of August 10, 2010 and reporting date of April 4, 2011, there were no injuries to be discovered or noted.  Also, after reviewing the Psychological evaluation, it was determined that West did not exhibit the behavior associated with having experienced a traumatic event.  West did show signs of irritability, but was cooperative with all aspects of the interview.  He was unable to link current complaints to the alleged sexual assault.  He credibly denied suicidal ideation and appeared to be looking forward to a way to live rather than die.  Nevertheless, he did appear stressed over what he considers chronic security problems.  The allegation that he was sexually assaulted was determined to be unfounded.

(Doc. 17-1 at 43.)  However, the "CAMS" assignment of separation was placed on West and the cellmate who allegedly assaulted him "due to the seriousness of the allegation and the possibility of retaliation by either inmate."  (Id.)

1.      Facts regarding exhaustion of Bivens claims

The BOP has a three-level administrative remedy process that must be fully exhausted before an inmate can bring an action in federal court.  (Doc. No. 17-1, Romano Decl. ¶ 3; 28 C.F.R. § 542.10, et seq. (2004)).  The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement.  Id. at § 542.10(a).  If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.  Id. at § 543.10(c).

In order to exhaust appeals under the administrative remedy procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter.  Id. at § 542.13(a).  If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden.  Id. at § 542.14.  The warden in then to respond to the complaint within 20 calendar days.  Id. at § 542.18.  If dissatisfied with the warden's response, the inmate may then appeal to the BOP Regional Director within 20 calendar days.  Id. at § 542.15(a).  If the response from the Regional Director is unsatisfactory, the inmate may then appeal to the BOP Central Office within 30 calendar days.  The Central Office is the final level of administrative appeal in the BOP administrative grievance system.  An exception to the above is made for appeals of decisions of a DHO, which are first raised directly to the BOP Regional Office and then to the Central Office.  No administrative remedy appeal is considered to have been fully exhausted until rejected by the BOP Central Office.  (Id. at § 542.15(a).

In the ordinary course of business, computerized indices are kept of administrative remedies filed by inmates.  On July 2, 2012, a review of these records was conducted to

determine whether West fully exhausted his <u>Bivens</u> claims.  (Doc. No. 17-1, Ex. 1, Romano

Decl. ¶ 4.)  The search was restricted to administrative remedies filed by West with respect to

issues arising at USP-Lewisburg that were appealed through the final level of appeal at the BOP

Central Office.  The search revealed a total of eight (8) exhausted administrative remedies.  The

only <u>Bivens</u> claims alleged by West in this action addressed in any of the exhausted remedies are

that (1) Defendant Shade threatened to place him in restraints if he refused to accept a cellmate

and wrote a false incident report against him and (2) Defendant Shultz tried to reveal the content

of his copout to his cellmate and that several hours passed before Shultz notified a lieutenant

about the alleged sexual assault.

Specifically, on or about April 6, 2011, West submitted an informal request to staff which

read as follows:

> On 3/29/11, I ask Officer Shade to contact the Lieutenant, regarding a cell move.  Officer
> Shade responded with "I know what you're up to and if you try that shit today I am going
> to have your ass put into restraints.  Now file on that."  When I was returning from
> recreation I told Officer Murray that I didn't want to go back to my cell.  I was place in a
> holding cage.  During this time I talked to a Lieutenant [illegible] and Case Manager
> Kissel.  The Lieutenant said he was going to have me place in restraints, if I refused my
> cellmate.  I told the Lieutenant that I have a constitutional right not to be place in danger
> and subject to cruel and unusual punishment. The Lieutenant said "he had a way around
> that."  Officer Shade then falsify a conduct report stating that I had threatened my
> cellmate and then I was placed in restraints.

(Doc. No. 17-1 at 19, Att. C.)  This request was denied on April 20, 2011. (<u>Id</u>. at 20.)  West then

filed an administrative remedy request (No. 638796) with the Warden, alleging that Shade wrote

a false incident report accusing him of threatening his cellmate and another officer, and claiming

this was done in retaliation for filing a past complaint against Shade's co-worker.  (<u>Id</u>. at 21.)

The Warden denied this remedy on June 6, 2011.  (<u>Id</u>. at 22.)  An appeal was filed with the

Regional Office, and thereafter denied on July 19, 2011.[5]  West appealed to the Central Office

and this appeal was denied on March 16, 2012. (Doc. No. 59-1 at 4.)  It was noted that the merits

of the DHO decision regarding the disciplinary action against West was not addressed in that the

DHO's decision and sanction had not been appealed.

On September 20, 2010, West filed an administrative remedy (No. 607646) at the

institutional level alleging that on August 10 and 11, 2010, he submitted informal requests to

staff alleging that his cellmate had a weapon and threatened to stab him.  He claimed that staff

failed to take any action and later tried to inform his cellmate of the content of his requests.  He

further claimed that several hours passed before a lieutenant was notified.  (Doc. 17-1 at 53, Ex.

3.)  The Warden responded to this remedy on October 27, 2010, for informational purposes only

because West had not requested any relief.  (Id.)  West filed an appeal to the Regional Office and

then to the Central Office, which denied his appeal on February 23, 2011.  (Id. at 54; Doc. No.

59-1 at 2.)

### 2.    Facts regarding exhaustion of FTCA claims

BOP records reveal that West filed eight (8) administrative tort claims.[6]  (Doc. No. 17-1,

Romano Decl. ¶ 7; Att. F.)  The filing of an administrative tort claim with the appropriate federal

agency is a jurisdictional prerequisite to bringing a civil action against the United States for

damages for the negligence or wrongful act of any employee of the United States.  28 U.S.C. §

---

[5]  The Regional Director noted that West improperly attempted to raise new claims in his appeal with respect to being placed in a cell with another inmate who kicked him and also that he was made to sleep on the floor.  West was advised that these claims would not be addressed in this response.  (Id. at 24.)

[6]  Four of these administrative claims were filed prior to the time the incidents alleged in the pending action occurred.  As such, they have no relevance to this action.

2675(a).

Administrative Tort Claim No. TRT-NER-2012-03467 was filed on January 10, 2012.  In this claim, West alleged that informal requests submitted to staff advising them that his cellmate had a weapon and was threatening him were ignored, and that he was subsequently sexually assaulted by his cellmate.  He also claimed that Defendant Shultz came to his cell later and "tried to reveal" the contents of his copout about the assault to his cellmate, as well as refused to let him speak to a lieutenant.  West further claimed that he was threatened by staff not to mention the assault, issued false misconduct reports by Defendants Shade and Shultz, and denied medical attention.  (Doc. No. 17-1 at 48, Romano Decl., Att. G.)  The tort claim was denied on July 16, 2012, approximately six weeks after West filed the instant action with this Court. (Doc. No. 59-1 at 1.)

Administrative Tort Claim No. 2012-05190 was filed by West on April 25, 2012, and involved the issue of wrist restraints cutting off his circulation.  This claim was denied on October 24, 2012, almost five (5) months after the pending action was filed.  (Id. at 10.)

With respect to the other two (2) tort claims filed during the relevant time period, Administrative Claim No. 2011-05204 was filed on June 22, 2011, and concerned an incident occurring on May 27, 2011, and not alleged in the pending action.  (Id. at 8.)  Administrative Claim No. 2011-06338 filed on August 3, 2011 set forth a personal injury claim involving broken ribs and bruises West sustained following an inmate attack on May 15, 2011.  (Id. at 6.) This administrative tort claim was denied on February 1, 2012, approximately three months before this action was filed.

### C.    Discussion

10

1.    Bivens Claim

Defendants move for summary judgment with respect to all Bivens claims raised by West

on the basis of failure to exhaust, with the exception of the claims against Defendants Shade and

Shultz.  Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to

pursue all avenues of relief available within the prison's grievance system before bringing a

federal civil rights action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Booth v.

Churner, 206 F.3d 289, 291 (3d Cir. 2000).

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is

mandatory.  Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007).  The "exhaustion requirement

applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong."  Porter v.

Nussle, 534 U.S. 516, 532 (2002).  A prisoner must "exhaust all available administrative

remedies" regardless of whether the administrative process may provide the prisoner with the

relief that he is seeking.   Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the

power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the

ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S.

749, 766 (1975).  The PLRA "completely precludes a futility exception to its mandatory

exhaustion requirement.  Nyhuis, 204 F.3d at 71.  Thus, prisoners are required to exhaust

available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any

other federal law. Jones v. Bock, 127 S. Ct. 910, 918-19 (2007); Oriakhi v. United States, 165 F.

App'x 991, 993 (3d Cir. 2006)(citing Ahmed v. Dragovich, 297 F.3d 201, 209 & n.9 (3d Cir.

2002).  The Oriakhi Court stated:

the fact that [the inmate] completed the administrative review process before the District Court reached the exhaustion question is of no consequence.  Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies <u>after</u> the filing of the complaint in federal court.

<u>Id</u>. (emphasis added)(citing <u>Johnson v. Jones</u>, 340 F.3d 624, 627 (8th Cir. 2003).

Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant."  <u>Brown v. Croak</u>, 312 F.3d 109, 111 (3d Cir. 2002) (citing <u>Ray v. Kertes</u>, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S. Ct. 2378, 2387  (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  <u>Id</u>. at 2386.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  <u>Id</u>. at 2387 (quoting <u>Porter</u>, 534 U.S. at 525.)  Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default.").  Procedural default is a question of law.  <u>Id</u>. at 232.

Pursuant to the BOP's administrative remedy procedure, inmates are to informally present their complaints to the staff for resolution.  28 C.F.R. § 542.13(a).  If unsuccessful, the inmate can then file a complaint with the Warden within twenty (20) calender days of the

complained about event.  (Id. at § 542.14.)  The Warden is to respond within twenty (20)

calender days.  (Id. at § 542.18.)  If dissatisfied with the Warden's response, an appeal may be

taken to the Regional Director within twenty (20) calender days.  (Id. at § 542.15(a).)  If

dissatisfied with the Regional Director's response, an appeal may be taken to the BOP's Central

Office within thirty (30) calender days of the Regional Director's response.  The Central Office

is the final level of appeal in the BOP.[7]

     If a remedy is rejected, it is returned to the inmate and the inmate is provided with a

written notice explaining the reason for rejection.  A copy of the remedy is not maintained by the

BOP.  28 C.F.R. § 542.17(a).  Accordingly, an inmate has not exhausted all available remedies

thereby enabling him to file suit in federal district court until the complaint has been presented to

all levels of the BOP administrative process prior to filing suit in the district court.

     Since his incarceration at USP-Lewisburg, West has filed forty-two (42) administrative

remedies.  Of the remedies filed, only eight (8) have been submitted to the Central Office.  Only

two (2) of the eight (8) have been properly exhausted.  The other remedies filed there were

rejected and, therefore, not considered.  (Doc. No. 17-1 at 14-17.)

     The only two (2) Bivens claims exhausted through the BOP's Central Office are West's

claims that (1) Defendant Shade threatened to place him in restraints if he refused to accept a

cellmate, wrote a retaliatory false misconduct report against him on March 29, 2011, and placed

him in restraints and (2) on August 10 and 11, 2010, staff failed to act upon complaints that

West's cellmate threatened to stab him, the cellmate thereafter sexually assaulted him, Shultz

---

[7] An exception to the above procedure is made for appeals of Discipline Hearing Officer
decisions, which are first raised directly with the Regional Office, and then appealed to the
Central Office.  See 28 C.F.R. § 542.14(d)(4).

tried to reveal the contents of the cop-outs to the cellmate which resulted in a second sexual

assault, and Shultz failed to immediately notify a lieutenant of the assault.[8]  (Doc. No. 17-1,

Romano Decl. at 3.)

In opposing Defendants' claim that all remaining <u>Bivens</u> claims are unexhausted, West

argues that Defendants used retaliatory conduct and threats against him for pursuing

administrative remedies and, as such, they made the administrative remedy process unavailable

to him.  He offers nothing but unsupported conclusory statements that he attempted to grieve any

of the remaining <u>Bivens</u> issues and was prevented from doing so by any prison official.  In fact,

his grievance records reveal that he had no problem submitting grievances, he merely failed to

complete exhaustion with respect to many of the remedies filed.   Other than submitting

documents with respect to the two administrative remedies that Defendants already concede are

exhausted, West only produces a copy of the Warden's response to Administrative Remedy No.

638797 regarding his request on May 1, 2011 to be moved from his cell in J-Block.  Because

West had thereafter been moved to D-Block on May 15, 2011, his remedy was marked as

granted when reviewed by the Warden on May 27, 2011, and no further appeals were pursued.

There are no other documents submitted by West even suggesting he attempted to pursue the

claims set forth in his complaint and was prevented or hindered from doing so.

A party opposing summary judgment must come forth with "affirmative evidence,

beyond the allegations of the pleadings," in support of its right to relief.   <u>Pappas v. City of

Lebanon</u>, 331 F. Supp.2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e).  This evidence must

---

[8]  These claims were contained in administrative remedies No. 607646-A1 and No. 638796-A1.  (Doc. 17-1 at 3, 19-26 and 53-54.)

14

be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also Fed. R. Civ. P. 56(c), (e).  West has failed to meet his burden with respect to the administrative exhaustion of his Bivens claims with the exception of the two claims set forth above.  Based on the foregoing, Defendants are entitled to summary judgment with respect to all other Bivens claims on the basis of failure to exhaust.

2.    FTCA claims

The Federal Tort Claims Act constitutes "a limited waiver of the United States's sovereign immunity." White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010).  The FTCA provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674.

"The FTCA contains a jurisdictional exhaustion component." Rosario v. American Export-Isbrandtsen Lines, Inc., 531 F.2d 1227, 1231 (3d Cir. 1976).  Specifically, federal courts cannot assume jurisdiction over FTCA claims until : (1) the plaintiff has initially presented the claim to the appropriate federal agency within two years of the date the claim accrues; and (2) the agency has either denied the claim or failed to make a final disposition within six months of the plaintiff's presentation of the claim.  28 U.S.C. § 2675(a); see also White-Squire, 592 F. 3d at 457; McNeil v. United States, 508 U.S. 106, 112 (1993)("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.") If the

agency does not act within six months, the failure to issue a decision may be treated as a final

decision by the claimant.  See id.

As a result, an FTCA claim is not properly brought in the district court where the plaintiff

has not exhausted his administrative remedies prior to filing suit.  See, e.g., Abulkhair v. Bush,

413 F. App'x 502, 506 (3d Cir. 2011); Accolla v. United States Gov't, 369 F. App'x 408, 409-10

(3d Cir. 2010)(finding the district court properly dismissed FTCA claim where the plaintiff filed

federal suit prior to exhausting administrative remedies).  Complete exhaustion is required

before invocation of the judicial process.  McNeil, 508 U.S. at 111-12.

BOP records reveal that West filed 8 administrative tort claims.[9]  (Doc. No. 17-1 at 45,

Att. F.)  The only tort claim discussed by Defendants is # 2012-03467, wherein West claimed

that he informed staff that his cellmate had a weapon and was threatening him, and that he was

later sexually assaulted by the cellmate.  In this claim he also alleged that Defendant Shultz came

to his cell and tried to reveal the contents of his requests to his cellmate, resulting in a second

sexual assault.  West further claimed that he was threatened by staff not to mention the assault,

issued false misconduct reports by Defendants Shade and Shultz, and refused medical attention.

Defendants seek summary judgment with respect to the issues set forth in the above tort

claim due to West's failure to exhaust prior to filing the pending action.  Administrative Tort

Claim #2012-03467 was filed on January 17, 2012, and denied on July 16, 2012.  (Doc. No. 17-1

at 51.)  Because the pending action was commenced on May 29, 2012, prior to West completing

---

[9]  In reviewing the BOP records submitted by Defendants, it is clear that 4 of the 8
administrative tort claims listed are irrelevant in that they address incidents occurring prior to the
those alleged in the instant complaint.

exhaustion with respect to said tort claim, all issues contained therein are unexhausted for purposes of the FTCA action.

In opposing Defendants' motion for summary judgment with respect to the issues raised in tort claim #2012-03467, West raises two arguments.  First, while he does not dispute the fact that he commenced this action prior to the administrative denial of tort claim #2012-03467, he claims that the denial occurred before Defendants filed their response to his complaint in this action.  However, this fact is irrelevant for purposes of determining whether an FTCA claim is exhausted.  West failed to satisfy the jurisdictional prerequisites of 28 U.S.C. § 2675(a) prior to initiating this lawsuit.  See Hoffenberg v. Provost, 154 F. App'x 307, 310 (3d Cir. 2005)(affirming dismissal of an FTCA claim as unexhausted because it was still pending when the plaintiff filed suit and rejecting argument that filing an amended complaint after conclusion of federal agency proceedings cured defect of initiating suit prior to final decision in administrative remedy process.).

Further, to the extent West asserts that the exhaustion of his Bivens claims through the BOP's administrative remedy process has any bearing on the exhaustion of his FTCA claims, his argument is wholly without merit.  Because of the mandatory exhaustion procedures under both the PLRA and the FTCA, and the separate purposes of these procedures with respect to the different claims, courts have consistently held that fulfillment of one exhaustion requirement does not satisfy the other.  See Lambert v. United States, 198 F. App'x 835, 840 (11th Cir. 2006); Brockett v. Parks, 48 F. App'x 539, 541 (6th Cir. 2002).  This Court has also made clear that the administrative exhaustion requirements under the PLRA and the FTCA are separate and distinct, and that each must be independently followed in order for an inmate to maintain Bivens and

negligence claims in the same action. See Williams v. Bledsoe, Civ. No. 3:CV-12-1235, 2013 WL 5522848 *19-20 (M.D. Pa. Oct. 3, 2013)(Caputo, J.); Lopez v. Brady, Civ. No. 4:CV-07-1126, 2008 WL 4415585, at *10 (M.D. Pa. Sept. 25, 2008)(McClure, J.) Accordingly, the claims set forth in administrative tort claim #2012-03467 are unexhausted for purposes of any FTCA claim West seeks to pursue in this action.

Defendants do not address the seven (7) other administrative tort claims filed by West and listed in the BOP Case Search Result List. However, in opposing Defendants' contention that all of his FTCA claims are unexhausted, West argues that he did exhaust administrative tort claims #2011-6341, #2011-6338, #2011-05204, and #2012-5190. (Doc. No. 59 at 4.) Based upon opposing evidentiary materials he submits, it is clear that tort claim #2011-06338 raises the issue of the cellmate attack on West on May 15, 2011, and that this claim was exhausted prior to the filing of this action and within the six (6) months of the denial of the tort claim. (Doc. No. 59-1 at 6.) As such, this issue is exhausted for purposes of the pending FTCA action.

The remaining tort claims referenced by West are either unexhausted or do not involve issues contained in the complaint. Although tort claim #2012-05190 addresses injury caused by tight wrist restraints, an issue in the complaint, this tort claim was not exhausted through the required administrative channel prior to the commencement of this action. (Doc. No. 59-1 at 10, Administrative Claim Denial dated 10/24/12.) Tort claims #2011-05204 and #2011-6341 do not appear to raise issues set forth in West's complaint. Accordingly, Defendants' motion for summary judgment on the basis of failure to exhaust the FTCA claims will be granted at this stage only with respect to the issues raised in administrative tort claims #2012-03467 and #2012-05190.

## IV.    Motion to Dismiss

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. at 556.  "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'"  Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis."  Fowler, supra, 578 F.3d at 210.  First, we separate the factual elements from the legal elements and disregard the legal conclusions.  Id. at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 211 (quoted case omitted).

This Court is mindful, however, that the sufficiency of this pro se pleading must be

construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a

claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or

futility.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-11 (3d Cir. 2002); Shane v.

Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### B.      Discussion

Defendants move to dismiss West's Bivens claims on the basis of failure to state a claim

upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  A Bivens claim is an

implied right of action allowing plaintiffs to sue federal agents acting under color of federal

authority for civil rights violations.  It is analogous to its statutory counterpart, 42 U.S.C. § 1983,

which offers private citizens a cause of action for violations of federal law by state officials.[10]

The required elements of a Bivens claim are (1) the conduct complained of was a person acting

under color of law, and (2) the conduct deprived that person of a right, privilege, or immunity

secured by the Constitution.  See, e.g., Grohman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d

Cir. 1995)(describing elements of a § 1983 claim).

To establish liability under Bivens, the personal involvement of each defendant in the

alleged deprivation must be demonstrated.  Personal involvement or some affirmative action on

the part of a defendant is necessary before he or she may be found liable for a civil rights

violation.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988.)  Each named defendant

---

[10]  It has been held that the principles and analysis applicable to § 1983 actions are
equally applicable to Bivens-type actions.  See Schrob v. Catterson, 948 F.2d 1401, 1408-09 (3d
Cir. 1991)("... courts have generally relied upon the principles developed in the case law
applying      § 1983 to establish the outer perimeters of a Bivens claim against federal officials.")

must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which a plaintiff's claims are based.  Rode, 845 F.2d at 1207.

As previously determined, the only exhausted Bivens claims before the Court are that (1) Defendant Shade threatened to place West in restraints if he refused to accept a cellmate, and thereafter wrote a false misconduct against him in retaliation for filing a past complaint against Shade's coworker and (2) on August 11, 2010, Defendant Shultz came to West's cell and "tried to inform" his cellmate about a cop-out he submitted claiming the cellmate had sexually assaulted him, that when Shultz left he was sexually assaulted again by the cellmate, and that several hours passes before Shultz notified a lieutenant about the sexual assault.

      1.    Personal Involvement

Defendants move to dismiss the claims set forth against Defendant Shultz on the basis of lack of sufficient personal involvement.  They maintain that West has failed to specifically allege that Shultz actually did inform his cellmate of the cop-out submitted regarding the sexual assault, and if he did, that he did so intentionally.

A prison officials' deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.  Farmer v. Brennan, 511 U.S. 825, 828-29 (1994). Labeling an inmate a snitch may give rise to an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate.  See Benefield v. McDowall, 241 F.3d 1267, 1270 (10th Cir. 2001).  Prison officials exhibit deliberate indifference when they know of and disregard an excessive risk to inmate safety; mere negligence will not suffice.  Id. at 835-37.  To constitute deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." Id. at 837.

In the instant case, West has plead sufficient facts to state a failure to protect claim. Reading the complaint's allegations in the light most favorable to West, he alleges that Shultz came to his cell, made an effort to advise his cellmate that he filed a cop-out against him for sexual assault, and that as a result the cellmate assaulted West when Shultz left the cell.  In addition, Shultz failed to immediately notify a lieutenant following the assault.  At this stage of the proceedings, West has alleged sufficient personal involvement against Shultz, and the claims will be allowed to proceed.

### 2.    Failure to State a Constitutional Claim Against Shade[11]

Defendants move to dismiss West's claim that Defendant Shade violated his rights when he threatened to place him in restraints if he did not enter his cell.  Even assuming Shade made this remark, it is well-settled that mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights.  Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973); Maclean v. Secor, 876 F.Supp. 695, 698-99 (E.D. Pa. 1995).  Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992)(guard put a revolver to the inmate's head and threatened to shoot).  This is not the case here.  For these reasons, the

---

[11]  Defendants also move to dismiss Defendants Edinger, Adami, Whittaker, Bahre, Bledsoe, Hudson and Young on this basis. Because the Court has previously found that only the Bivens claims set forth against Shade and Shultz have been exhausted, this ground will only be considered with respect to Shade.

verbal threat claim will be dismissed.

Defendants also seek to dismiss West's claim that he was issued a false misconduct report by Defendant Shade.  It is well settled that a claim that a misconduct report was false, standing alone, does not violate a prisoner's constitutional rights, so long as procedural due process protections were provided.  Richardson v. Sherrer, 344 F. App'x 755, 757-58 (3d Cir. 2007); Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from disciplinary proceedings.  A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights by filing a false misconduct report must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to showing that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in the prison discipline context, an inmate's retaliation claim will fail whenever the defendant shows that there is "some evidence" to support the disciplinary action.  As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . ."  See Henderson v.

Baird, 29 F.3d 464, 469 (8th Cir. 1994)(stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010).

These claims are judged against exacting legal standards, and in many instances resolution of prison disciplinary claims entails an examination of matters outside the pleadings relating to the disciplinary proceedings themselves.[12] See, e.g., Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001). However, in other instances the presence of "some evidence" supporting the prison infraction is apparent on the pleadings, and summary dismissal of the retaliation claim is appropriate. See Brown v. Hannah, 850 F.Supp.2d 471, 478 (M.D. Pa. 2012). This is not the case here. The pleadings do not set forth any information with respect to the disciplinary proceedings conducted against West. Without passing judgment as to the ultimate success of his retaliation claim, at this stage it must be permitted to proceed.

## V.   Qualified immunity

Defendants argue that they are entitled to qualified immunity because they did not violate West's clearly-established constitutional rights.[13] (Doc. No. 17 at 25.) Qualified immunity protects "government officials performing discretionary functions" by "shield[ing them] from

---

[12] While Defendants have filed a motion to dismiss and for summary judgment, they have not moved for summary judgment with respect to this claim. As such, the Court cannot consider any documents submitted by Defendants in support of their summary judgment motion which may speak to this claim.

[13] Because the Court will grant Defendants' summary judgment motion with respect to all Defendants except Defendants Shade and Shultz, the Court's qualified immunity discussion relates only to these two Defendants.

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity shields the government officials from facing lawsuits.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  To determine whether an official is entitled to qualified immunity, the Court must decide, in either order, whether, "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right," and "whether the right was clearly established" at the time of the official's conduct, in that a reasonable officer would have known his conduct was unlawful.  Id. at 201; Egolf v. Witmer, 526 F.3d 104, 110 (3d Cir. 2008) (citations omitted).

   Viewing the evidence in favor of West as the non-movant, the Court found that West properly stated a claim against Defendant Schultz for failure to protect in violation of the Eighth Amendment, and against Defendant Shade for retaliation.  See Section IV.B.1-2.  Thus, the Court will assess whether Defendants Schultz and Shade's conduct violated clearly established law such that every "reasonable official would have understood that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635 (1987).  The Court need not rely on a precedential case that is factually identical, but "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011) (citations omitted).

   Considering the facts in the light most favorable to West, the Court finds that Defendants have not shown that their conduct did not violate any clearly established right.  Defendants merely state that "[i]n the instant case, no reasonable official would conclude that any of West's allegations as to any named Defendant would constitute a clearly-established violation of his

constitutional rights."   (Doc. No. 17 at 25.)  Defendants' statement is merely a legal conclusion,

and such conclusory statements are insufficient to meet the pleading burden for qualified

immunity.  See Thomas v. Independence Twp., 463 F.3d 285, 293-94 (3d Cir. 2006) ("[T]he

burden of pleading qualified immunity rests with the defendant, not the plaintiff . . . . [P]laintiff

has no obligation to plead a violation of clearly established law in order to avoid dismissal on

qualified immunity grounds.").  Id. at 293.  Accordingly, the Court will deny Defendants' motion

to dismiss on the basis of qualified immunity.

**VI.     Conclusion**

Based on the foregoing, West's motion to supplement the complaint will be denied, and

Defendants' motion to dismiss and for summary judgment will be granted in part and denied in

part.  An appropriate order follows.