IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD A. WEST, | : | |
|     Plaintiff | : | |
| | : | No. 1:12-cv-1004 |
| v. | : | |
| | : | (Judge Kane) |
| OFFICER SHULTZ, et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

I.     BACKGROUND

Pro se Plaintiff Gerald A. West ("West"), an inmate currently incarcerated at the Trumbull Correctional Institution in Ohio, initiated the above-captioned action on May 29, 2012 by filing a complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. (Doc. No. 1.) The action named as Defendants the United States of America, as well as a number of staff employed at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"). (Id.) Subsequently, on February 17, 2016, the Court granted Defendants' dispositive motion and ordered that this matter be closed. (Doc. Nos. 129, 130.) West filed a notice of appeal on March 7, 2016, claiming that the Court failed to address a claim against Defendant Spade that was asserted in the complaint. (Doc. No. 132.) On October 3, 2017, the United States Court of Appeals for the Third Circuit dismissed the appeal for lack of jurisdiction (Doc. No. 138), but subsequently remanded this matter on November 24, 2017 on the basis that that a claim against Defendant Spade remained in this action (Doc. No. 139 at 4-5).

Specifically, the remaining claim is that on August 11, 2010, Defendant Spade threw away a "copout" submitted by West that alleged a sexual assault by West's cellmate.[1] (Doc. No. 1 ¶ 14.)

Accordingly, on February 13, 2018, Defendant Spade filed a motion for summary judgment (Doc. No. 146), and subsequently filed a brief in support (Doc. No. 147), and statement of facts (Doc. No. 148). West filed a brief in opposition on May 18, 2018 (Doc. No. 151), but did not file a statement of material facts in accordance with M.D. Pa. Local Rule 56.1 and this Court's April 11, 2018 Order (Doc. No. 150). On June 1, 2018, Defendant Spade filed a reply brief. (Doc. No. 152.) On June 19, 2018, observing that Defendant Spade raised the issue of whether West exhausted his administrative remedies, the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and by doing so, would consider matters outside the pleadings in its role as factfinder.[2] (Doc. No. 153.) Defendant filed his supplemental brief on June 29, 2018, providing that he stands on his previous brief and materials as filed. (Doc. No. 154.) West did not file supplemental materials in a timely manner and in accordance with this Court's June 19, 2018 Order. (Doc. No. 153.) Rather, on July 30, 2018, West filed a sur-reply brief, which the Court construes as his supplemental material. (Doc. No. 155.) Having been fully briefed, the motion for summary judgment is ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that

---

[1] The term "copout" refers to an informal request made by an inmate to a staff member at a correctional facility.
[2] Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of

proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 U.S. Dist. LEXIS 64347, at *11 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III. DISCUSSION[3]

The Bureau of Prison ("BOP") utilizes an administrative procedure with respect to inmate complaints. (Doc. No. 148 ¶ 1.) In accordance with this system for managing administrative remedies, inmates must first informally present their complaints to the staff, whose role is to attempt to resolve the matter. (Id. ¶ 2.) If this process is unsuccessful, the inmate must submit an appropriate form so as to notify the Warden, within twenty (20) calendar days, of the complaint (id. ¶ 3), and the Warden has twenty (20) calendar days to respond to the complaint (id. ¶ 4). If dissatisfied with the Warden's response, the inmate may then appeal the decision to the Regional Director within twenty (20) calendar days. (Id. ¶ 5.) Further, if the Regional Director's response is not satisfactory, the inmate may then appeal this response within thirty (30) calendar days to the Central Office (id. ¶ 6), which represents the final stage of the administrative appeal process employed by the BOP (id.).

---

[3] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendant's Rule 56.1 statement of material facts. (Doc. No. 148.) West has failed to file a response to Defendant's statement of material facts in compliance with M.D. Pa. L.R. 56.1, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." See Hammonds v. Collins, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, the Court deems the facts set forth by Defendant to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

5

The above procedure recognizes an exception for appeals of decisions by discipline hearing officers, whereby the complaint is initially raised to the Regional Office and followed by an appeal to the Central Office. (Id. ¶ 7.) If a remedy is rejected, it is returned to the inmate and the inmate is notified in writing of the reason for the rejection. (Id. ¶ 8.) Prior to filing suit in federal court, an inmate must first exhaust all administrative remedies available pursuant to the aforementioned process. (Id. ¶ 9.)

On December 26, 2017, a search of the BOP's computer-generated administrative remedies database was performed with the scope limited to August 1, 2010 through August 31, 2011, revealing that West filed 31 administrative remedies. (Id. ¶¶ 10 - 12.) Administrative remedies filed at the institutional level are denoted with the letter "F", while remedies filed at the Regional Office level are denoted by the letter "R", and remedies filed at the Central Office level are denoted by the letter "A". (Id. ¶¶ 13-15.) While none of the 31 administrative remedies filed by West alleged that staff threw away a copout (Id. ¶ 16), West had filed administrative remedy number 606458-F1 on September 10, 2010 at the institutional level alleging that "staff disregarded copout/risk of serious harm." (Id. ¶ 17.) This administrative remedy was rejected on September 10, 2010 for West's failure to attempt informal resolution prior to submitting the remedy. (Id. ¶¶ 18, 19.) While West was informed that he could resubmit this remedy in proper form within 10 days, he never re-submitted this remedy. (Id. ¶¶ 20, 21.) On October 28, 2010, West filed administrative remedy number 612946-F1 at the institutional level, claiming that staff did not answer "copouts/filing remedies." (Id. ¶ 22.) This remedy was rejected on October 28, 2010 because West failed to attempt informal resolution prior to submitting this remedy. (Id. ¶¶ 23, 24.) West was informed that he could resubmit this remedy in proper form within 10 days, however, West did not resubmit the remedy. (Id. ¶¶ 25, 26.)

Defendant Spade seeks an entry of summary judgment on the remaining claim that he threw away a copout submitted by West, which alleged a sexual assault by West's cellmate. (Doc. No. 147 at 6.) Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); see also Petrucelli v. Hasty, 605 F. Supp. 2d 410 (E.D. N.Y. 2009) (providing that the PLRA's exhaustion requirement applies to Bivens claims).

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred

7

from subsequently litigating claims in federal court. See e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to strictly comply with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368; see also Camp v. Brennan, 219 F.3d at 281 (reasoning that the exhaustion requirement was met where the Office of Professional Responsibility fully examined the merits of an excessive force claim and there was uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x

8

at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'") (citations omitted).

Defendant Spade argues that West's allegation that on August 10, 2010 or August 11, 2010, Defendant Spade "took [West] to a holding cell and told[] him that he did not believe the cop-out, so he thr[ew] it away" (Doc. No. 1 ¶ 14), was never filed in accordance with the BOP's administrative remedy procedure, and accordingly, is unexhausted (Doc. Nos. 147 at 8, 148 ¶ 16). Of the thirty-one (31) administrative remedies filed by West from August 1, 2010 through August 31, 2011, remedy number 606458-F1 – which alleged that "staff disregarded copout/risk of serious harm" – was rejected on September 10, 2010 as a result of West's failure to attempt informal resolution prior to submitting the remedy. (Doc. No. 148 ¶¶ 17, 18.) In addition, remedy number 612946-F1, alleging that "staff [was] not ans[wering] copouts/filing remedies" was rejected on October 28, 2010 due to West's failure to attempt informal resolution prior to submitting the remedy. (Id. ¶¶ 22-24.) Defendant Spade further provides that West did not re-submit either remedy after being informed of his ability to do so. (Id. ¶¶ 20, 21, 25, 26.)

In his oppositional brief and sur-reply brief, West maintains that he exhausted his remedies concerning the remaining claim that Defendant Spade "took Plaintiff to a holding cell and told[] him that he did not believe the copout, so he thr[ew] it away" via administrative remedy number 607646. (Doc. Nos. 151 at 3, 155 at 1.) As highlighted by Defendant Spade, remedy 607646 concerned two specific issues that occurred on August 10, 2010 and August 11, 2010 (Doc. No. 17-1 at 53-54), and pertained to West notifying two officers that his cellmate

9

was in possession of a weapon and had threatened to stab him. (Id.) West claims that: he was ignored; staff members attempted to reveal the context of West's copouts to his cellmate; and several hours passed before a lieutenant was notified. (Id.) The relevant administrative remedy failed to include any allegations that Officer Spade discarded West's copout(s). (Id.); see also Lombardi v. Pugh, No. 4:cv-05-0300, 2009 WL 1649908, at *8 (M.D. Pa. June 9, 2009) (providing that plaintiff failed to exhaust his administrative remedy because he failed to put defendants on notice of the general claim against them and allow them to respond to it through the administrative remedy process). Consequently, upon review of the undisputed record, the Court concludes that West has failed to exhaust his administrative remedy procedure regarding his claim that Defendant Spade threw away his copout in August 2010.

West also maintains in his oppositional brief that he filed at least ten additional remedies alleging that prison staff threw away his copouts. (Doc. No. 151 at 9, ¶ 16.) This assertion, however, is not supported by any citation to the record in violation of M.D. Pa. L.R. 56.1, and West has not attached any such administrative remedies supporting this assertion. See Hammonds, 2016 WL 1621986, at *3. Moreover, for the first time in his opposition brief and sur-reply brief to Defendant Shade's motion for summary judgment, West attempts to raise a new argument, asserting that prison officials "hampered" his ability to exhaust administrative remedies "on some issues" by subjecting him to retaliatory conduct and confiscating his legal materials when he attempted to obtain or submit complaints of employee misconduct. (Doc. No. 151 at 3.) However, West may not utilize his brief in opposition to amend his complaint. See Stillwater Lakes Civic Assoc., Inc. v. Gorka, No. 3:cv-08-2264, 2009 WL 10685190, at *1 n.2 (M.D. Pa. Apr. 2, 2009) ("[I]t is axiomatic that a complaint may not be amended by the Plaintiff through a brief.") (citation omitted). Moreover, West provides no evidentiary support for this

10

allegation and the Court cannot find any support in the record.  Consequently, Defendant Spade is entitled to an entry of summary judgment in his favor.[4]

V. **CONCLUSION**

Based on the foregoing, Defendant Spade's motion for summary judgment (Doc. No. 146), will be granted.  An appropriate Order follows.

---

[4] West's oppositional brief and sur-reply brief also includes an argument that he has properly exhausted his Federal Tort Claims Act ("FTCA") remedies. (Doc. Nos. 151 at 5, 155 at 1.) However, the Court notes that there are no FTCA claims presently before it.